# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE NEW YORK TIMES COMPANY, )
*et al.*,                    )
                             )
      **Plaintiffs,**      )
                             )
      **vs.**             )
                             )     **Civil Action No. 1:17-cv-00087**
U.S. DEPARTMENT OF JUSTICE,  )
                             )
      **Defendant.**       )
                             )
                             )
                             )
_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant United States Department of Justice ("DOJ") respectfully moves the Court to enter summary judgment on behalf of DOJ on Plaintiffs' claims pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as there are no genuine issues of material fact regarding DOJ's compliance with the FOIA in responding to Plaintiffs' FOIA request. The accompanying Memorandum of Points and Authorities more fully sets forth the reasons that support Defendant's Motion for Summary Judgment.

Dated: May 5, 2017          Respectfully submitted,

                              CHAD A. READLER
                              Acting Assistant Attorney General

                              MARCIA BERMAN
                              Assistant Branch Director,
                              Federal Programs Branch

_/s/ Julia A. Berman_
JULIA A. BERMAN (D.C. Bar No. 986228)
Trial Attorney
julia.berman@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 616-8480
Fax: (202) 616-8470

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE NEW YORK TIMES COMPANY,   )
*et al.*,   )
  )
      Plaintiffs,   )
  )
      vs.   )
  )     **Civil Action No. 1:17-cv-00087**
U.S. DEPARTMENT OF JUSTICE,   )
  )
      Defendant.   )
  )
  )
  )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................... 2

ARGUMENT .................................................................................................................................. 4

   I.   FOIA Statutory Background and Standard of Review ....................................................... 4

   II.  FOIA Exemption 5............................................................................................................. 6

   III. Defendant has properly withheld from disclosure documents protected by the
        attorney-client privilege under FOIA Exemption 5. .......................................................... 7

CONCLUSION............................................................................................................................. 11

# TABLE OF AUTHORITIES

## Cases

*Am. Civil Liberties Union v. Dep't of Def.*,
628 F.3d 612 (D.C. Cir. 2011) ................................................................. 4

*Am. Civil Liberties Union v. NSA* ("*ACLU v. NSA*"),
13 Civ. 09198, 2017 WL 1155910 (S.D.N.Y. Mar. 27, 2017) ......................................... passim

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................. 5

*Burka v. Dep't of Health & Human Servs.*,
87 F.3d 508 (D.C. Cir. 1996) ................................................................. 6

*CIA v. Sims*,
471 U.S. 159 (1985) ................................................................. 4

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ................................................................. 9

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976) ................................................................. 4

*Dep't of Justice v. Tax Analysts*,
492 U.S. 136 (1989) ................................................................. 5

*Elec. Frontier Found. v. Dep't of Justice*,
739 F.3d 1 (D.C. Cir. 2014) ................................................................. 9

*Fisher v. United States*,
425 U.S. 391 (1976) ................................................................. 6

*In re Lindsey*,
148 F.3d 1100 (D.C. Cir. 1998) ................................................................. 6

*In re Sealed Case*,
737 F.2d 94 (D.C. Cir. 1984) ................................................................. 6

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989) ................................................................. 4

*Lasko v. Dep't of Justice*,
684 F.Supp.2d 120 (D.D.C. 2010) ................................................................. 5

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ................................................................. 6, 7

ii

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ................................................................................. 5

*N.Y. Times Co. v. Dep't of Justice*,
   806 F.3d 682 (2d Cir. 2015)..................................................................................... 9

*Privacy Info. Ctr. v. Dep't of Justice*,
   No. 1:06-CV-214 (RCL), 2014 WL 1279280 (D.D.C. Mar. 31, 2014) .................... 8

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ............................................................................... 5

*Pub. Emps. for Envtl. Responsibility v. EPA ("PEER")*,
   211 F. Supp. 3d 227, 230  (D.D.C. 2016) ...................................................... passim

*Shapiro v. Dep't of Justice*,
   --- F. Supp. 3d ---, 2017 WL 1411549 (D.D.C. Apr. 20, 2017).............................. 5

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ........................................................................................ 1, 6, 7

## **Statutes**

5 U.S.C. § 552(b) .......................................................................................................... 3, 4, 6

50 U.S.C. § 3024(i) ............................................................................................................... 3

## **Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................. 5

## INTRODUCTION

Exemption 5 of the Freedom of Information Act ("FOIA") shields from disclosure, *inter alia*, information that is protected by the attorney-client privilege.  That privilege "is the oldest of the privileges for confidential communications known to the common law," and "[i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  As this Court recognized, "[w]ithout protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice.  This very policy concern grounds FOIA's Exemption 5." *Pub. Emps. for Envtl. Responsibility v. EPA* ("*PEER*"), 211 F. Supp. 3d 227, 230 (D.D.C. 2016).

Indeed, the public interest in full and frank communication is heightened when Executive Branch agencies seek legal advice from the Department of Justice Office of Legal Counsel ("OLC").  As explained in the accompanying Declaration of Paul P. Colborn, Exhibit 1 hereto ("Colborn Decl."), OLC is often asked to provide legal advice with respect to very difficult and unsettled issues of law, regarding highly complex and sensitive activities of the Executive Branch on matters that can be quite controversial.  Colborn Decl. ¶ 3.  So that Executive Branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters, it is essential that OLC legal advice provided in the context of internal deliberations—and Executive Branch officials' willingness to seek such advice—not be inhibited by concerns about public disclosure.  *Id.*

OLC legal advice provided in the context of internal deliberations is precisely what is at issue in this case.  The two documents responsive to the Plaintiffs' FOIA request are a classified

OLC legal advice memorandum and its accompanying cover memorandum, both reflecting

Executive Branch agency client communications seeking legal advice, as well as predecisional

legal advice from OLC attorneys transmitted to an executive branch client as part of

governmental deliberative processes.  Colborn Decl. ¶¶ 11–12 .  Less than two months ago, the

court in *American Civil Liberties Union v. National Security Agency* ("*ACLU v. NSA*"), 13 Civ.

09198,  2017 WL 1155910 (S.D.N.Y. Mar. 27, 2017), held that these same two documents are

protected from disclosure by the attorney-client privilege and FOIA's Exemption 5.  For the

reasons set forth below and detailed in the attached declaration, the Court should likewise find

that FOIA shields these documents from disclosure, and grant Defendant's motion for summary

judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2016, Plaintiff Charlie Savage, in his capacity with Plaintiff The New

York Times Company, submitted a FOIA request to the Department of Justice Office of Legal

Counsel ("OLC") and to the Department of Justice National Security Division ("NSD").  *See*

Colborn Decl. ¶ 7; *see also* Colborn Decl. Ex. A.  Mr. Savage's request stated that he sought:

"Memorandum for the Attorney General from Theodore B. Olson, Assistant Attorney General,

Office of Legal Counsel, Re: Constitutionality of Certain National Security Agency Electronic

Surveillance Activities Not Covered Under the Foreign Intelligence Surveillance Act of 1978,

(May 24 1984)."  *See* Colborn Decl. ¶ 7 (quoting Colborn Decl. Ex. A, at 1).  On December 13,

2016, Mr. Savage submitted a follow up communication, referencing his October 28, 2016

request and stating that he believed it to encompass "the cover letter" of the requested document,

but "out of an abundance of caution," was "explicitly requesting access to that cover letter."  *See*

*id.* ¶ 8 (citing Colborn Decl., Ex. B, at 1).  The Department of Justice had not yet finished processing Mr. Savage's request by the time Plaintiffs initiated this action.

Plaintiffs filed their Complaint on January 13, 2017, *see* Compl., ECF No. 1, and Defendants answered on February 22, 2017.  *See* Answer, ECF No. 9.  On March 10, 2017, DOJ responded to Mr. Savage in a letter from Mr. Colborn.  *See* Colborn Decl. ¶ 9.  Mr. Colborn acknowledged receipt of Mr. Savage's October 28, 2016 request and his December 13, 2016 follow up communication, and informed Mr. Savage that OLC had construed his FOIA request to seek all memoranda by Assistant Attorney General Theodore Olson regarding surveillance dated in May 1984.  *See id.* (citing Colborn Decl., Ex. C, at 1 (OLC Response (March 10, 2017)).

Mr. Colborn further informed Mr. Savage that a search of OLC's records had identified two responsive records and that NSD had also referred the same two records to OLC for processing in response to the request directed to NSD.  *Id.*  Mr. Colborn explained that both documents were protected by the attorney-client privilege, and accordingly OLC was withholding them in full pursuant to FOIA Exemption 5.  *Id.* (citing 5 U.S.C. § 552(b)(5)).  Finally, Mr. Colborn indicated that one of the documents contains portions that are properly classified and protected by the National Security Act, 50 U.S.C. § 3024(i)(1), and which are therefore also exempt from disclosure under FOIA Exemptions 1 and 3.  *Id.* (citing 5 U.S.C. §§ 552(b)(1), (3)).

On March 14, 2017, the Court directed the parties to submit a joint status report to inform the Court whether they intended to move for summary judgment and, if so, to propose a briefing schedule.  *See* Mar. 14, 2017, Minute Order.  The parties conferred and jointly proposed a schedule for briefing of their cross-motions for summary judgment.  *See* ECF No. 11.  On March 22, 2017, the Court entered the schedule proposed by the parties.  *See* March 22, 2017 Minute

Order.  On May 3, 2017, the Court further granted a consent motion to bifurcate briefing in this case, so that the instant motion "may be limited to Defendant's assertion of FOIA Exemption 5 as the basis for withholding in full the two documents at issue in this matter," and permitting Defendant "to assert at a later date FOIA Exemptions 1 and 3 to withhold portions of those same documents, if necessary."  May 3, 2017 Minute Order.  Accordingly, the instant motion addresses only FOIA Exemption 5 as a basis for withholding in full the two documents at issue in this matter.

## ARGUMENT

Defendants have properly withheld the two documents at issue in this case pursuant to FOIA Exemption 5 because those documents are protected by the attorney-client privilege. Before detailing why that is so, however, we turn first to the statutory background and standard of review in this type of FOIA case.

### I.        FOIA Statutory Background and Standard of Review

The Freedom of Information Act was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  "Congress recognized," however, "that public disclosure is not always in the public interest," *CIA v. Sims*, 471 U.S. 159, 166-67 (1985), "and has therefore provided the nine exemptions listed in 5 U.S.C. § 552(b)."  *Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 618 (D.C. Cir. 2011).  Despite the "liberal congressional purpose" of FOIA, the Supreme Court has recognized that these statutory exemptions are intended to have "meaningful reach and application."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

"FOIA cases are generally resolved at summary judgment," *PEER*, 211 F. Supp. 3d at 230, "which is appropriately granted when the movant has established that 'there is no genuine dispute as to any material fact,' warranting 'judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).  "In deciding a motion for summary judgment, the Court assumes the truth of the non-movant's evidence and draws all reasonable inferences in the non-movant's favor." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

"In a FOIA case, '[t]he burden is on the agency to demonstrate . . . that the materials sought . . . have not been improperly withheld.'"  *Id.* at 231 (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).  An agency can satisfy its burden "with supporting affidavits or declarations if they are 'relatively detailed and non-conclusory,'" *Shapiro v. Dep't of Justice*, --- F. Supp. 3d ---, 2017 WL 1411549, at *2 (D.D.C. Apr. 20, 2017) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)), and "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Id, (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "Such affidavits or declarations are accorded 'a presumption of good faith.'"  *Id.* (quoting *Lasko v. Dep't of Justice*, 684 F.Supp.2d 120, 127 (D.D.C. 2010) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d at 1200)).

In the instant case, as discussed in Section III below, Mr. Colborn's declaration submitted herewith meets the Defendant's burden by explaining, with reasonably specific detail, why the two documents at issue are properly shielded from disclosure under Exemption 5.

## II.      FOIA Exemption 5

Exemption 5 shields from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  As this Court recently explained, "[t]he scope of Exemption 5 is properly 'determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters.'"  *PEER*, 211 F. Supp. 3d at 230 (quoting *Burka v. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996)).  Thus, Exemption 5 protects, *inter alia*, attorney-client communications from disclosure.  *Id.*

The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  *See Upjohn Co.*, 449 U.S. at 389; *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984).  The privilege applies to communications between agency counsel and agency officials and employees who are their clients.  *See*, *e.g.*, *In re Lindsey*, 148 F.3d 1100, 1104-05 (D.C. Cir. 1998) (per curiam).  As this Court has recognized, "[w]ithout protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice,"  *PEER*, 211 F. Supp. 3d at 230, and "[t]his very policy concern grounds FOIA's Exemption 5."  *Id.*  "Exemption 5 is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of information to agency decision-makers.  Certainly this covers professional advice on legal questions that bear on those decisions."  *Id.* at 231 (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977)); *see also In re County of Erie*, 473 F.3d 413, 418, 422 (2d Cir.

2007) ("Access to legal advice by officials responsible for formulating, implementing and monitoring governmental policy is fundamental to 'promot[ing] broader public interests in the observance of law and administration of justice,') (quoting *Upjohn,* 449 U.S. at 389, and holding that documents "sent for the predominant purpose of soliciting or rendering legal advice" are covered by the attorney-client privilege).

### III. Defendant has properly withheld from disclosure documents protected by the attorney-client privilege under FOIA Exemption 5.

Consistent with the above-discussed principles, the Government has withheld two documents from disclosure in this case.  As Mr. Colborn explains in his declaration, the first withheld document (Document 1) is a cover memorandum transmitting a legal advice memorandum (Document 2).  *See* Colborn Decl. ¶ 11.  Document 2 is a classified OLC legal advice memorandum, addressed to the Attorney General and signed by OLC Assistant Attorney General Theodore Olson.  *Id.* ¶ 12.  This OLC memorandum was written in response to confidential communications from an executive branch client soliciting legal advice from OLC attorneys regarding contemplated intelligence activities; it contains confidential client communications made for the purpose of seeking legal advice, and predecisional legal advice from the head of OLC to the Attorney General for eventual transmission to an executive branch client as part of governmental deliberative processes.  *Id.* ¶¶ 12, 16.  Document 1, the cover memorandum, contains an unclassified partial summary of Document 2, including a description of the solicitation of advice and a summary of the memorandum's conclusion.  *Id.* ¶ 11.

Having been asked to provide legal advice, the OLC attorneys preparing Documents 1 and 2 stood in a relationship of trust with their executive branch client.  *Id.* ¶¶ 4, 16.  And, just as disclosure of client confidences provided in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice for their clients,

so, too, would disclosure of the legal advice itself undermine that trust.  *Id.*  These documents, containing "professional advice on legal questions which bears on [agency] decisions" and "an agency's communications with its attorneys" thus fall squarely within the categories that the Court of Appeals found to be "[c]ertainly" protected from disclosure under Exemption 5.  *Mead Data Cent., Inc.*, 566 F.2d at 252.

As Mr. Colborn explains, OLC legal advice is generally kept confidential, and that confidentiality is particularly important because of OLC's role in the decisionmaking process: OLC is often asked to provide advice and analysis with respect to very difficult and unsettled issues of law.  Colborn Decl. ¶ 3.  Frequently, such issues arise in connection with highly complex and sensitive activities of the Executive Branch on matters that can be quite controversial.  *Id.*  So that executive branch officials may continue to request, receive, and rely on candid legal advice from OLC on such sensitive matters, it is essential that OLC legal advice provided in the context of internal deliberations—and executive branch officials' willingness to seek such advice—not be inhibited by concerns about public disclosure.  *Id.* ¶¶ 3, 4; *see also id.* ¶ 4 (highlighting that, in the governmental context, promoting full and frank communication between governmental attorneys and their clients supports the broader public interests in the government's observance of law and the administration of justice).

Another judge of this Court recently found that OLC legal advice memoranda fell within the scope of Exemption 5 because, *inter alia*, they were protected by the attorney-client communication privilege, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 1:06-CV-214 (RCL), 2014 WL 1279280, at *1 (D.D.C. Mar. 31, 2014),[1] and, less than two months ago, the court in

---

[1] This decision rests heavily on the then-recent decision by the D.C. Circuit that a different OLC opinion was wholly exempt from disclosure under Exemption 5 and properly withheld as privileged pursuant to the deliberative process privilege.  *See Elec. Frontier Found.*

*ACLU v. NSA* held that the very documents at issue in this case were properly withheld under Exemption 5 because they were "confidential communications seeking or providing legal advice from government attorneys to their clients," *ACLU v. NSA*, 2017 WL 1155910, *9.  *See* Colborn Decl. ¶ 13 (explaining that Document 1 and Document 2 in the instant case correspond to OLC 1 and OLC 2, respectively, in *ACLU v. NSA*).

The court in *ACLU v. NSA* rejected the plaintiffs' argument in that case that Documents 1 and 2, among other OLC memoranda, "contain working law and are therefore not subject to Exemption 5."  2017 WL 1155910, *10.  Although, as this Court has recognized, Exemption 5 does not protect from disclosure legal advice that is, in effect "precedential" to prevent the creation of "a body of 'secret law,'" *PEER*, 211 F. Supp. 3d at 232 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980)), the court in *ACLU v. NSA* explained that "OLC memoranda are not working law unless expressly adopted," 2017 WL 1155910, *10.  Quoting recent D.C. Circuit and Second Circuit decisions addressing OLC opinions, the court elaborated:  "[a]t most, [OLC memoranda] provide, in their specific contexts, legal advice as to what a department or agency 'is *permitted* to do' but OLC '[does] not have the authority to establish the "working law" of the [agency],' and its advice 'is not the law of an agency unless the agency adopts it.'"  *Id.* at *10 (emphasis in original) (quoting *N.Y. Times Co. v. Dep't of Justice*, 806 F.3d 682, 687 (2d Cir. 2015) (quoting *Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 8, 10 (D.C. Cir. 2014)).

---

*v. Dep't of Justice*, 739 F.3d 1 (D.C. Cir.), *cert. denied*, No. 13-1474, 135 S. Ct. 356 (2014) ["*EFF*"]; *see also New York Times v. Dep't of Justice*, 806 F.3d 682, 687 (2d Cir. 2015).  Although both the deliberative process and attorney-client privileges were asserted in *EFF*, the district court and appeals court found the deliberative process privilege alone sufficient to resolve the case and did not reach the attorney-client privilege.  As the subsequent district court cases make clear, however, the rationale applies with equal force to both privileges.

Indeed, the court in *ACLU v. NSA* relied on a declaration submitted by Mr. Colborn explaining, as he has done in this case, *see* Colborn Decl. ¶ 2, that:

> OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch.  OLC does not purport to make policy decisions, and in fact lacks authority to make such decisions.  OLC's legal advice and analysis may inform the decisionmaking of Executive Branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted.

2017 WL 1155910, *10 (quoting Colborn Decl., Ex. D (Colborn *ACLU* Declaration)).  To illustrate the point, the court looked at Document 2, referred to as "OLC 2" in that case, "a memorandum written by Theodore Olson in 1984."  *Id.* at *11.  The court considered the plaintiffs' argument that Document 2 was "working law" because it had been cited as support for a proposition in a 2007 memorandum; the court rejected that argument because the 2007 memorandum actually proceeded, "in an abundance of caution," on the assumption that that proposition (for which Document 2 was cited) was incorrect.  *Id.*  The court found this to be "indicative that [Document 2] was not adopted, formally or informally, as the agency position on an issue."  *Id.* (quotation omitted).  The court thus granted the Government's summary judgment motion as to Exemption 5's application to Document 2 (as well as Document 1, and the other OLC memoranda at issue in that case).  *Id.*

This Court should likewise find that Documents 1 and 2 are protected by the attorney-client privilege.  As discussed above, Documents 1 and 2, an OLC legal advice memorandum and its cover memorandum, both reflect client confidences shared through communications made for the purpose of seeking legal advice, and predecisional legal advice from OLC attorneys for eventual transmission to an executive branch client as part of governmental deliberative processes.  Colborn Decl. ¶¶ 12, 16.  The documents contain no reasonably segregable, nonexempt information, and, to the best of Mr. Colborn's knowledge, have never been disclosed

publicly, or publicly adopted or incorporated by reference by any policymaker as a basis for a policy decision. *Id.* ¶¶ 20–22. Accordingly, here, as in *ACLU v. NSA*, Document 1 and Document 2 have been properly withheld in full as protected by the attorney-client privilege pursuant to Exemption 5.

## **CONCLUSION**

For all of the foregoing reasons, the Department of Justice respectfully requests that the Court enter judgment in its favor as a matter of law on the grounds that it has fully complied with FOIA in responding to Plaintiffs' FOIA request, and that its withholding of the documents at issue in this case pursuant to FOIA Exemption 5 is proper.

Dated: May 5, 2017                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director,
Federal Programs Branch


  */s/ Julia A. Berman*
JULIA A. BERMAN (D.C. Bar No. 986228)
Trial Attorney
julia.berman@usdoj.gov
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 616-8480
Fax: (202) 616-8470

*Attorneys for Defendant*

- 11 -