UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          X

THE NEW YORK TIMES COMPANY
and CHARLIE SAVAGE,

                         Plaintiffs,

                     Civil Action No. 17-cv-87 (CRC)

              - against -

U.S. DEPARTMENT OF JUSTICE,

                         Defendant.
_____X

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND
RESPONSE TO DEFENDANT'S STATEMENT OF FACTS NOT IN DISPUTE**

      Pursuant to Local Civil Rule 7(h) of the Rules of the United States District Court for the District of Columbia, Plaintiffs The Times and Charlie Savage (collectively, "The Times") hereby submit the following statement of material facts as to which The Times contends there is no genuine issue in connection with its cross-motion for partial summary judgment and The Times's response to Defendant Department of Justice's ("DOJ") statement of material facts.

**Response to Defendant's Statement of Material Facts Not in Dispute**

1. The Times agrees that the facts set forth in ¶ 1 of DOJ's statement of material facts are not in dispute.

2. The Times agrees that the facts set forth in ¶ 2 of DOJ's statement of material facts are not in dispute, except that The Times disputes the applicability of Exemption 5 and the attorney-client privilege.

1

3. The Times agrees that the facts set forth in ¶¶ 3-4 of DOJ's statement of material facts are not in dispute.

4. The Times agrees that the facts set forth in ¶¶ 5-7 of DOJ's statement of material facts are not in dispute. The Times disputes, however, the implication that these facts demonstrate the existence of an attorney-client relationship between the Office of Legal Counsel ("OLC") and the executive branch entity for purposes of legal advice contained in the Olson Memorandum, which they do not.

5. The Times disputes the facts set forth in ¶ 8 of DOJ's statement of material facts. Exemption 5 does not shield the Olson Memorandum or the Cover Letter from disclosure under FOIA. Therefore, even assuming Exemptions 1 and 3 permit the withholding of some portions of the Olson Memorandum, both it and the Cover Letter contain reasonably segregable, nonexempt information.

6. The Times disputes the facts set forth in ¶ 9 of DOJ's statement of material facts. The Times submits that DOJ has not demonstrated that, for purposes of the legal advice rendered in the Olson Memorandum, OLC stood in an attorney-client relationship with any executive branch entity other than the Attorney General.

7. The Times agrees that the facts set forth in ¶¶ 10-13 of DOJ's statement of material facts are not in dispute.  The Times submits, however, that DOJ has not demonstrated that its general statements about the need for and propriety of confidentiality in ¶¶ 11 and 13 still apply to the Olson Memorandum, given (1) the memorandum's circulation outside the attorney-client relationship and (2) that the memorandum has become the working law of DOJ with respect to the constitutional implications of electronic surveillance under Executive Order ("EO") 12333, 46 Fed. Reg. 59,941 (Dec. 4, 1981). (Decl. of David E.

McCraw ("McCraw Decl."), Ex. 1, Ex. 2 at 22 (June 12, 2017).) Furthermore, DOJ has failed to explain what steps have been taken to protect the memorandum's confidentiality.

8. The Times agrees that the facts set forth in ¶¶ 14-17 of DOJ's statement of material facts are not in dispute. The Times submits, however, that whatever OLC purports its role in executive branch policymaking to be generally, DOJ's treatment of the Olson Memorandum has converted it into the working law of DOJ with respect to the constitutional implications of electronic surveillance under EO 12333. (*See* McCraw Decl., Ex. 1, Ex. 2 at 22.)

**Plaintiffs' Statement of Material Facts Not in Dispute**

9. The Olson Memorandum analyzes the constitutionality of contemplated National Security Agency ("NSA") surveillance activities pursuant to its authority under EO 12333. (McCraw Decl., Ex. 1 at 4 n.4, Ex. 2 at 22; Colbron Decl. ¶ 12, Ex. D (*Vaughn* index, second row).)

10. The cover letter transmitted with the Olson Memorandum partially summarizes the contents of the Olson Memorandum and so is shielded by Exemption 5 only to the extent that the Olson Memorandum is. (Colborn Decl. ¶ 11.)

11. The NSA is the non-Attorney General executive branch entity that DOJ's declarant says provided information about its contemplated intelligence activity to OLC.[1] (McCraw Decl., Ex. 1 at 4 n.4 (title of Olson Memorandum indicates that it analyzes information pertaining to NSA surveillance activities); Colborn Decl., Exs. A, C (acknowledging existence of OLC memorandum responsive to FOIA request that asked for Olson Memorandum by title).)

---

[1] For ease of reference, The Times will refer to that non-Attorney General executive branch entity as the NSA.

**The Attorney-Client Relationship**

12. The Attorney General was the only executive branch entity to which OLC rendered the legal advice contained in the Olson Memorandum. (Colborn Decl. ¶ 16, Ex. D (*Vaughn* index, second row).)

13. DOJ has failed to establish for what purpose the Attorney General "eventual[ly] transmi[tted]" the Olson Memorandum to the NSA. (Colborn Decl. ¶ 16.)

14. DOJ has failed to establish when the Attorney General "eventual[ly] transmi[tted]" the Olson Memorandum to the NSA. (Colborn Decl. ¶ 16.)

15. In 1984, at the time the Olson Memorandum was prepared, when OLC was asked to provide legal advice to a non-DOJ client agency, it responded directly to that agency; separately, it was often asked by DOJ clients to provide legal advice with respect to the activity of non-DOJ agencies, which were not OLC's clients for purposes of those memoranda. *Compare, e.g.*, Mem. Op. for the Deputy Legal Adviser, Dep't of State, from Larry L. Simms, Deputy Ass't Att'y Gen., OLC, *Authority of the State Department Office of Security to Investigate Passport and Visa Fraud* (Aug. 17, 1984), *available at* http://bit.ly/2s5e0OO; Mem. Op. for the Acting Gen. Counsel, Dep't of Def., from Theodore B. Olson, Ass't Att'y Gen., OLC, *Effect of* INS v. Chadha *on the Authority of the Secretary of Defense to Reorganize the Department of Defense Under U.S.C. § 125* (Apr. 26, 1984), *available at* http://bit.ly/2t3rcB0, *with* Mem. Op. for the Acting Ass't Att'y Gen., Civil Div., from Theodore B. Olson, Ass't Att'y Gen., OLC, *Authority of the Equal Opportunity Commission to Conduct Defensive Litigation* (June 21, 1984), *available at* http://bit.ly/2r3wgEB; Mem. Op. for the Ass't Att'y Gen., Land & Natural Res. Div., from Theodore B. Olson, Ass't Att'y Gen., OLC, *Application of the Resource*

*Conservation and Recovery Act to the Department of Energy's Atomic Energy Act Facilities* (Feb. 9, 1984), *available at* http://bit.ly/2r3umEb.

16. The only attorney-client relationship DOJ has established for purposes of the legal advice contained in the Olson Memorandum existed between OLC and the Attorney General. (Colborn Decl. ¶ 16.)

**Third-Party Information**

17. The NSA, not the Attorney General, provided OLC the information about contemplated intelligence activities whose constitutionality the Olson Memorandum analyzed. (Colborn Decl. ¶¶ 12, 16; McCraw Decl., Ex. 1 at 4 n.4 (indicating Olson Memorandum contains constitutional analysis of NSA surveillance activities).)

18. DOJ has not established that OLC provided legal advice to the NSA—whether directly or through the Attorney General—to guide a decisionmaking or policymaking process at the NSA. (Colborn Decl. ¶¶ 12, 16.)

19. DOJ has not established that the NSA was OLC's client for purposes of the legal advice contained in the Olson Memorandum. (Colburn Decl. ¶¶ 12, 16.)

**Confidentiality**

20. DOJ has not established how widely within and outside DOJ the Olson Memorandum has been circulated or shared since it was drafted. (*See* Colborn Decl. ¶¶ 11-22.)

21. DOJ has not established that it has taken any steps—let alone what steps it has taken—to preserve the confidentiality of the Olson Memorandum within the scope of the attorney-client relationship. (*See* Colborn Decl. ¶¶ 11-22.)

22. Among the executive branch officials who have had access to the Olson Memorandum are, in 2007, the Assistant Attorney General for NSD (McCraw Decl., Ex. 1) and, at some point not specified by DOJ, one or more officials at the NSA (Colborn Decl. ¶ 16).

23. In addition, Sen. Dianne Feinstein has said that multiple executive branch officials involved in EO 12333 surveillance activities have indicated before the Senate Judiciary Committee that they have had access to the Olson Memorandum. (McCraw Decl., Ex. 2 at 22.)

24. DOJ has not explained how these and other officials who may have had access to the Olson Memorandum fall within the scope of the attorney-client relationship between OLC and the Attorney General. (*See* Colborn Decl. ¶¶ 11-22.)

**Working Law**

25. On November 20, 2007, then-Assistant Attorney General for NSD Kenneth L. Wainstein sent a memorandum to the Attorney General, via the Acting Deputy Attorney General, with the subject line "Proposed Amendment to Department of Defense Procedures to Permit the National Security Agency to Conduct Analysis of Communications Metadata Associated with Persons in the United States" (the "Wainstein Memorandum"). (McCraw Decl., Ex. 1 at 1.)

26. The Attorney General must approve NSA surveillance techniques under § 2.3 and § 2.4 of EO 12333, 46 Fed. Reg. at 59,950-51, and to assist him in fulfilling that responsibility, the Wainstein Memorandum advised the Attorney General as to the legality of proposed NSA techniques for analyzing metadata pursuant to its authority under EO 12333. (McCraw Decl., Ex. 1 at 1-3, 8-10.)

27. The Wainstein Memorandum gave equal precedential weigh to circuit law and the Olson Memorandum as to the Fourth Amendment implications of certain EO 12333 surveillance activities. (McCraw Decl., Ex. 1 at 4 n.4.)

28. The Wainstein Memorandum also cited the Olson Memorandum as authority for the analytic framework and methodology that guided its Fourth Amendment inquiry. (McCraw Decl., Ex. 1 at 4 n.4.)

29. The Olson Memorandum was indexed and available to subsequent officials within OLC. *See* David J. Barron, Acting Ass't Att'y Gen., OLC, *Best Practices for OLC Legal Advice and Written Opinions*, at 4-5 (July 16, 2010), *available at* http://bit.ly/1r7LHf3.

30. Before the Senate Judiciary Committee, executive branch officials have relied on the Olson Memorandum to justify the legality of certain EO 12333-authorized electronic surveillance activities. (McCraw Decl., Ex. 2 at 22.)

31. Those officials have referred to the Olson Memorandum as a "seminal OLC opinion" that "govern[s] the conduct of collection activities under Executive Order 12333." (McCraw Decl., Ex. 2 at 22.)

Dated: New York, NY  
June 12, 2017

Respectfully submitted,

   /s/ David E. McCraw  
David E. McCraw, Esq.  
The New York Times Company  
Legal Department  
620 Eighth Avenue, 18th Floor  
New York, NY 10018  
phone: (212) 556-4031  
fax: (212) 556-4634  
mccraw@nytimes.com  
*Counsel for Plaintiffs*