**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE NEW YORK TIMES COMPANY,** *et al.*,<br><br>            Plaintiffs,<br><br>            v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>            Defendant. | Case No. 17-cv-00087 (CRC) |

**MEMORANDUM OPINION**

*New York Times* national security reporter Charlie Savage filed a Freedom of Information Act request with the Office of Legal Counsel of the U.S. Department of Justice seeking disclosure of a classified 1984 memorandum to the Attorney General from the then-Assistant Attorney General for OLC, Theodore Olson.  The memorandum purportedly discusses the constitutionality of certain electronic surveillance activities contemplated by the National Security Agency.  After the Department withheld the requested memo and an associated cover letter based on several FOIA exemptions, the *Times* and Savage filed suit.  Both sides now move for summary judgment on a single question:  are the Olson memo and its cover letter subject to the attorney-client privilege and therefore protected from disclosure by FOIA Exemption 5?  The Court finds that Exemption 5 applies and will grant summary judgment in favor of the Department of Justice.

**I.     Factual Background**

In October 2016, *New York Times* reporter Charlie Savage submitted a request under the Freedom of Information Act ("FOIA") to the Office of Legal Counsel ("OLC") seeking a specific document: "Memorandum for the Attorney General from Theodore B. Olson, Assistant

Attorney General, Office of Legal Counsel, Re: Constitutionality of Certain National Security Agency Electronic Surveillance Activities Not Covered Under the Foreign Intelligence Surveillance Act of 1978, (May 24, 1984)." Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s MSJ") 2. Shortly thereafter, Savage amended his FOIA request to explicitly encompass both the document and its associated "cover letter" (collectively, the "Olson Memo"). Id.

After OLC did not timely respond to his request, Savage and The New York Times Company (collectively "the Times") brought suit in January 2017. Following the complaint, OLC informed the Times that it had identified two responsive documents, but that both documents were being withheld in full pursuant to Exemption 5 of FOIA and in part pursuant to Exemptions 1 and 3 of FOIA. Def.'s MSJ 3. On May 3, 2017, the Court issued a minute order bifurcating briefing on summary judgment. The parties subsequently filed cross-motions for summary judgment on the sole issue of whether Exemption 5 supported withholding the Olson Memo.

## II. Legal Background

A party is entitled to summary judgment when the record shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor. Calhoun v. Johnson, 632 F.3d 1259, 1261 (D.C. Cir. 2011). FOIA cases are typically and appropriately resolved on summary judgment. See, e.g., Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).

When an agency withholds documents under one of the exemptions to FOIA, "[t]he burden is on the agency" to show that the documents "have not been improperly withheld." U.S.

Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  In addition, exemptions to FOIA are to be narrowly construed.  See, e.g., AquAlliance v. U.S. Bureau of Reclamation, 856 F.3d 101, 103 (D.C. Cir. 2017).

At issue here is FOIA Exemption 5, which permits the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 essentially excludes from disclosure any materials that would be privileged from discovery in civil litigation, including, as relevant here, those protected by the attorney-client privilege.  Tax Analysts v. IRS, 294 F.3d 71, 76 (D.C. Cir. 2002).

The attorney-client privilege protects the disclosure of confidential communications between attorneys and their clients.  See, e.g., Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980).  The privilege thus "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  However, the privilege does not protect *all* communications between an attorney and her client.  Rather, it applies only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance."  Fisher v. United States, 425 U.S. 391, 403 (1976).  The privilege encompasses both a client's communications to his attorney and the attorney's "communication [to her client] based on confidential information provided by the client."  Schlefer v. United States, 702 F.2d 233, 245 (D.C. Cir. 1983).  The attorney-client privilege fully applies to communications between government attorneys and the government officials and agencies to which they render legal service.  See, e.g., Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997).

**III. Analysis**

The Department claims that the Olson Memo is protected under the attorney-client privilege and thus is subject to withholding under Exemption 5. The Times retorts that the memo is not privileged because (1) it contains no confidential client information and (2) it has not been kept confidential. Additionally, the Times contends that even if the Olson Memo falls under the attorney-client privilege, it is not protected by Exemption 5 because it has become the "working law" of the Department.

    A. Attorney-Client Privilege

The Court agrees with the Department of Justice that the Olson Memo and its cover letter are exempted from disclosure under Exemption 5 because both fall within the scope of the attorney-client privilege. The Olson Memo is a classified memorandum purportedly containing legal advice to the Attorney General regarding intelligence activities contemplated by the National Security Agency ("NSA"). Def's MSJ Ex. 1 ("First Colborn Decl.") ¶ 12. According to a declaration submitted by OLC Special Counsel Paul Colborn, it details legal advice given to the Attorney General based on confidential information provided by the NSA and was intended for and later transmitted to the NSA. Id. ¶ 16; Def.'s Opp'n Pls.' Cross-Mot. Partial Summ. J. Ex. A ("Second Colborn Decl.") ¶¶ 2–3. This is a quintessential example of the sort of document that falls within the attorney-client privilege: advice from an attorney (the head of OLC) to his client (the Attorney General and, subsequently, the NSA) concerning the legal aspects of the client's contemplated actions and based on confidential information from the client concerning those contemplated actions. See, e.g., In re Sealed Case, 737 F.2d 94, 101 (D.C. Cir. 1984) (holding that attorney-client privilege applied to conversation where the attorney "rendered legal advice [to the Company], based, at least in part, on Company confidential

information previously disclosed to him"). It thus lands squarely in the heartland of Exemption 5.

The Times advances two to the contrary. First, it contends that the Olson Memo does not contain confidential client information because the Attorney General, not the NSA, is OLC's client for purposes of the memo. As a result, the argument goes, OLC's legal advice to the Attorney General was based on information provided by a third party (the NSA) rather than a client (the Attorney General), and it thus falls outside the scope of the attorney-client privilege. See, e.g., Tax Analysts, 117 F.3d at 619 ("To the extent that the legal conclusions in [the document] are based upon information obtained from [third parties] . . . the attorney-client privilege does not apply.").

While the Times' legal proposition may be correct in certain circumstances, its factual premise—that the NSA was a third party rather than a client—is flawed. The Times makes much of the fact that the first declaration submitted by OLC Special Counsel Colborn to justify the withholding "opted for the ambiguous formulation 'eventual transmission'" to an unspecified executive branch agency rather than clearly stating that the legal advice was provided to the NSA as OLC's client. Pls.' Mem. Opp'n Def.s MSJ & Supp. Pls.' Cross-Mot. Summ. J. ("Pls.' MSJ") 11. But Colborn's second declaration—submitted with the Justice Department's reply—clarifies that the executive branch agency he referred to in his first declaration was the NSA and that the advice provided in the Olson Memo *was* ultimately transmitted to the NSA, as evidenced by a letter from then-Attorney General William French Smith to then-Director of the NSA Lt. Gen. Lincoln D. Faurer, which summarized the conclusions of the Olson Memo alongside a copy of the memo. Second Colborn Decl. ¶¶ 2–3.

The Times' argument also somewhat mischaracterizes OLC's position in the Department of Justice. See Pls.' MSJ at 11. OLC's role is to "render[] informal opinions and legal advice to the various agencies of the Government," to "assist[] the Attorney General in the performance of his functions as legal adviser to the President" and to "render[] opinions to the Attorney General and to the heads of the various organizational units of the Department on questions of law arising in the administration of the Department." 28 C.F.R. § 0.25(a), (c); see also First Colborn Decl. ¶ 2 ("The principal function of the OLC is to assist the Attorney General in his role as legal adviser . . . OLC provides advice and prepares opinions addressing a wide range of legal questions involving the operations of the Executive Branch."). In turn, the Attorney General's duties include "[f]urnish[ing] advice and opinions, formal and informal, on legal matters to the President and the Cabinet and to the heads of the executive departments and agencies of the Government." 28 C.F.R. § 0.5(c). While some OLC opinions are publicly released, its advice to the Attorney General or executive agencies is usually kept confidential. See First Colborn Decl. ¶ 3.

In other words, OLC helps the Attorney General provide legal advice to his client agencies, much as one attorney in a law firm might help her colleague in the firm provide advice to the firm's client. Yet no one would contend that the firm's client has somehow ceased being a client and has instead become a third party if the attorney writes her colleague a memo with advice regarding the firm client's proposed actions. So too here. The agency is the client who sought and ultimately received OLC's legal advice regarding its proposed activities. And that protection for the agency's confidential communications to its attorney is not lost simply because one attorney (the Attorney General) consults another (the Assistant Attorney General for OLC). See Mead Data Center, Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 361 n.24 (D.C. Cir. 1977)

("[T]he [attorney-client] privilege is not lost because an attorney consults other attorneys about the subject matter of the communication.").

The NSA's client status clearly distinguishes this case from those the Times relies on, which involve information received from a true third party and incorporated into the legal advice. See, e.g., Tax Analysts, 117 F.3d at 619 (memorandum from IRS attorney to IRS officials contained information from taxpayers); Schlefer, 702 F.2d at 245 (communication from agency counsel to agency official contained information from outsider seeking an advisory ruling from the agency). Here, by contrast, the NSA is a client of the Department of Justice—which encompasses the Attorney General and OLC. See Second Colborn Decl. ¶¶ 2–3 (Olson Memo was based on information provided by the NSA as part of its solicitation of legal advice intended to be conveyed to the NSA). As such, advice provided by OLC to the Attorney General fits squarely within the attorney-client privilege.

Furthermore, adopting the Times' position would undermine the purposes of the attorney-client privilege. The privilege serves to "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn, 449 U.S. at 389. Without a guarantee of confidentiality, executive branch agencies, like all legal clients, would hesitate to share private details about planned agency actions with the Attorney General when seeking legal advice. See First Colborn Decl. ¶¶ 3–4. And without such confidentiality, executive branch agencies might choose to forgo seeking legal advice altogether and thereby risk public disclosure of private, confidential details about their activities. This would undermine the public interests that buttress the attorney-client privilege, since executive agencies seeking out legal advice concerning their

planned activities helps ensure their actions conform to the law and the Constitution. See id. For these reasons, too, the Olson Memo falls within the scope of the privilege.

Next, the Times argues that any attorney-client privilege has been extinguished because the Olson Memo has not been kept confidential. The Times is correct that the privilege can be waived if the underlying confidential information or advice is shared. See, e.g., Mead Data, 566 F.2d at 253 ("If the information has been or is later shared with third parties, the privilege does not apply."). However, the Times points to no evidence establishing that the Olson Memo has been circulated to third parties or even widely circulated within the Justice Department. In fact, the record of this case suggests the opposite. For one, the Olson Memo is classified. See First Colborn Decl. ¶ 18. Classified materials must be kept confidential and can only be accessed by individuals with the requisite security clearance, who have signed a nondisclosure agreement, and who have a need to know the information. See Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009). Given its classified status, it seems unlikely the Olson Memo has been widely or indiscriminately circulated. Cf. Coastal States, 617 F.2d at 863–64 (holding attorney-client privilege had been waived where the Department was unable "to establish that some attempt had been made to limit disclosure of the documents" within the agency).

As evidence that the Olson Memo has not been kept confidential, the Times points to another purportedly classified memo to the Attorney General—a 2007 memo from then-Assistant Attorney for the National Security Division Kenneth Wainstein (the "Wainstein Memo")—and to the declaration of OLC Special Counsel Colborn filed with the Department's motion for summary judgment, both of which reference the Olson Memo. But both documents simply indicate that *some* attorneys within the Department of Justice—indeed, within OLC—had access to the Olson Memo, not that the memo has been widely disseminated within the

Department to attorneys not representing the NSA, let alone beyond the Department, in such a manner as to waive privilege.  Cf. FTC v. GlaxoSmithKline, 294 F.3d 141, 147 (D.C. Cir. 2002) (holding that, for an institutional client, there is no waiver of privilege where the documents are shared within the organization with those who "needed to provide input to the legal department and/or receive the legal advice and strategies formulated by counsel" (citation omitted)).

Moreover, the authors of both documents had reasons related to providing legal advice to the NSA to access the Olson Memo.  Colborn needed to know about the Olson Memo and its contents in order to support the Justice Department's assertion of the attorney-client privilege on behalf of the NSA in this case.  Similarly, the Wainstein Memo refers to the Olson Memo in the context of providing additional legal advice to the NSA.  See Pls.' MSJ Ex. 1 ("Wainstein Memo"), at 1 ("The Secretary of Defense seeks your approval of proposed Department of Defense Supplemental Procedures Governing Communications Metadata Analysis.").[1]  Neither of these documents evince the sort of sharing of confidential information with unaffiliated third parties that destroys the attorney-client privilege.

Other evidence in the record further undercuts the Times' argument.  For instance, the Times filed transcript excerpts from the confirmation hearing of former Attorney General Loretta Lynch in which Senator Dianne Feinstein refers to the Olson Memo and requests that a copy be made available to the members of the Senate Intelligence and Judiciary Committees.  Pls.' MSJ Ex. 2 ("Lynch Testimony"), at 2–3.  The fact that members of the relevant Senate Committees did not have copies of the memo in 2015 cuts against the conclusion that the Olson Memo has been disseminated to third parties.  Additionally, Colborn attested that, to his knowledge, the

---

[1] The Government has neither confirmed nor denied the authenticity of the copy of the Wainstein Memo offered by the Times.  Def.'s Opp'n Pls.' Cross-Mot. Partial Summ. J. 10 n.3.

Olson Memo has "not been previously disclosed publicly" and he is "not aware of any public statements that could constitute waiver of the privilege applicable to the document." First Colborn Decl. ¶ 22. Consequently, the record does not indicate that the attorney-client privilege for the Olson Memo has been waived and thus it is still within the scope of Exemption 5.

    B.  <u>Working Law</u>

Alternatively, the Times maintains that even if the Olson Memo is covered by the attorney-client privilege, it is not covered by Exemption 5 because it has become "working law." Pl.'s MSJ 17. The D.C. Circuit has held, in the context of the deliberative process privilege within Exemption 5, that FOIA does not shield documents that discuss a policy that is "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." <u>Coastal States</u>, 617 F.2d at 866. This "working law" exception ensures that agencies cannot develop "a body of 'secret law,'" that the agency relies upon "to discharge . . . its regulatory duties and [to] deal with the public.'" <u>Schlefer</u>, 702 F.2d at 244 (quoting <u>Coastal States</u>, 617 F.2d at 867).[2]

Yet the D.C. Circuit has narrowly limited the circumstances under which OLC memos can become an agency's working law. See generally <u>Elec. Frontier Found. v. U.S. Dep't of Justice</u>, 739 F.3d 1 (D.C. Cir. 2014). In <u>Electronic Frontier Foundation</u>, the Circuit rejected the contention that an OLC memo to the FBI had become the FBI's "working law" and thus was not encompassed by Exemption 5. <u>Id.</u> at 3. It reasoned that because OLC could not "speak with

---

[2] The Court is aware of no case that has ever applied the "working law" exception to abrogate the attorney-client privilege rather than the deliberative process privilege; the D.C. Circuit appears to have solely applied the exception to documents falling under the deliberative process privilege. However, the Court need not resolve the question of whether the exception applies to documents covered by the attorney-client privilege because neither party contests its applicability here.

authority" on the policy of the FBI, "the OLC Opinion could not be the 'working law' of the FBI unless the FBI 'adopted' what OLC offered." Id. at 9–10. Because "the FBI never *itself* publicly invoked or relied upon the contents of the OLC Opinion," the court concluded that the OLC memo was not the FBI's working law. Id. at 11.

The same is true here. The Olson Memo, like that in Electronic Frontier Foundation, "amount[ed] to advice offered by OLC for consideration by" the Attorney General and the NSA. Id. at 8. As with the FBI, OLC "is not authorized to make decisions about" the NSA's activities or the Attorney General's approval thereof. Id. at 9. And like the FBI, the Attorney General and NSA were "free to decline to adopt" the reasoning or conclusions of the OLC opinion. Id. at 10. Therefore, absent additional evidence that the Attorney General or NSA has affirmatively adopted the Olson Memo as their own policy and reasoning, the Olson Memo does not constitute working law.

The Times offers two pieces of evidence it contends show adoption, but neither is sufficient to do so. First, it argues that former Attorney General Lynch acknowledged the Olson Memo's adoption by the Department at her confirmation hearing. But in the hearing transcript it is Senator Feinstein, not Attorney General Lynch, who refers to the Olson Memo as "seminal." Lynch Testimony at 3. Lynch—prior to even being confirmed as Attorney General—simply stated that "[the memos] represent a discussion, an analysis of legal issues" and offered to "find a way to provide the information that [the committee] need[s]." Id. at 4. Much like in Electronic Frontier Foundation, Lynch's testimony concerning the Olson Memo was made "in response to inquiries" from Congress and she did not "affirmatively rais[e] [the memo] to justify" the Attorney General's or NSA's actions. 739 F.3d at 11. Her testimony therefore does not amount to an adoption of the positions taken in the memo.

11

Second, the Times again points to the 2007 Wainstein Memo. Even setting aside the authentication issues noted earlier, it too fails to establish adoption, as a decision from the Southern District of New York recently held. See American Civil Liberties Union v. NSA, No. 13-cv-09198, 2017 WL 1155910, at *11 (S.D.N.Y. Mar. 27, 2017). The Wainstein Memo refers to the Olson Memo once, in a footnote, where it cites the memo alongside a Sixth Circuit case for a general principle of law—that the Government's analysis of intelligence legally within its possession is likely not a search or seizure and thus does not fall within the Fourth Amendment. Wainstein Memo at 4 n.4. It then states that it will, as the Olson Memo did, assume the Fourth Amendment still applies out of an abundance of caution. Id. But neither of these two citations show that the Attorney General or the NSA has "*publicly* invoked the *reasoning* of the OLC memorandum" to defend any agency policy or action. Elec. Frontier Found., 739 F.3d at 11 (emphases added). To the extent the Wainstein Memo is authentic, it, too, is classified, not public, and nowhere in it does the Attorney General or NSA defend any action or policy using the Olson Memo. Rather, there is no evidence that the Attorney General or NSA has ever publicly invoked the Olson Memo to defend any action or policy. See First Colborn Decl. ¶¶ 21–22. The record is thus insufficient to show that the Attorney General or NSA has adopted the OLC memo. It is therefore not the Department's or the NSA's working law.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Defendant's Motion for Summary Judgment and will deny Plaintiffs' Cross-Motion for Partial Summary Judgment. A separate order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  October 20, 2017